UNITED STATES DISTRICT COURT
DISTRICT OF COURT MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB 10 P 1: 23

U.S. DISTRICT COURT
DISTRICT OF MASS.

JOHN C. JOHNSON JR. DEFINED BENEFIT PENSION )
PLAN, JOHN C. JOHNSON JR. TARGET BENEFIT )
PENSION AND JEFFREY S. JOHNSON and JOHN C. )
JOHNSON JR, JT., Individually and On Behalf of All )
Others Similarly Situated, )
)
)
Plaintiffs, )
)
vs. )
)
EPIX PHARMACEUTICALS, INC. (F/K/A EPIX )
MEDICAL, INC., MICHAEL D. WEBB, PEYTON J )
MARSHALL and ANDREW UPRICHARD, )
)
Defendants. )
)

05 - 10272 GAO

RECEIPT # 62019
CIVIL ACTION NO. 
AMOUNT
SUMMONS ISSUED 4
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
CLASS ACTION
BY DPTY. CLK. 
DATE 2/10/05

JURY TRIAL DEMANDED

MAGISTRATE JUDGE TLH

John C. Johnson Jr. Defined Benefit Pension Plan and Jeffrey C. Johnson, Jr. ("Plaintiffs"),

individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for

their complaint against defendants, allege the following based upon personal knowledge as to

themselves and their own acts, and information and belief as to all other matters, based upon, *inter*

*alia*, the investigation conducted by and through their attorneys which included, among other things,

a review of the Epix Pharmaceuticals, Inc. ("Epix" or the "Company") filings with the United States

Securities and Exchange Commission ("SEC"), all other public documents, conference calls and

announcements made by defendants, wire and press releases published by and regarding EPIX (f/k/a

EPIX Medical, Inc.) (collectively referred to as "EPIX" or the "Company"), securities analysts'

reports and advisories about the Company, and information readily obtainable on the Internet.

Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein

after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal class action on behalf of purchasers of the publicly traded securities of EPIX between July 10, 2003 and January 14, 2005 (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. 78j(b) and 78t(a)), and Rule10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1331.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act, 15 U.S.C. §78aa and 28 U.S.C. §1391(b). Many of the acts and transactions alleged herein, including the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

6.      Plaintiff, John C. Johnson Jr. Defined Benefit Pension Plan, as set forth in the

accompanying certification, incorporated by reference herein, purchased EPIX securities at artificially inflated prices during the Class Period and has been damaged thereby.

7.     Plaintiff, John C. Johnson Jr. Target Benefit Pension, as set forth in the accompanying certification, incorporated by reference herein, purchased EPIX securities at artificially inflated prices during the Class Period and has been damaged thereby.

8.     Plaintiff, Jeffrey S. Johnson and John C. Johnson Jr., JT, as set forth in the accompanying certification, incorporated by reference herein, purchased EPIX securities at artificially inflated prices during the Class Period and has been damaged thereby.

9.     Defendant EPIX is a Delaware corporation and maintains its principal executive offices at 161 First Street, Cambridge, Massachusetts 02142.

10.     Defendant Michael D. Webb ("Webb") was Chief Executive Officer, a director and Secretary of EPIX during all relevant times.

11.     Defendant Peyton J. Marshall ("Marshall") was Senior Vice President, Finance and Administration and Chief Financial Officer of EPIX during all relevant times.

12.     Defendant Andrew Uprichard ("Uprichard") was President and Chief Operating Officer of EPIX during all relevant times.

13.     Defendants Webb, Marshall, and Uprichard are collectively referred to hereinafter as the "Individual Defendants." During the Class Period, each of the Individual Defendants, as senior executive officers and/or directors of EPIX were privy to non-public information concerning its business, finances, products, markets and present and future business prospects via access to internal corporate documents, conversations and. connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and *via* reports

3

and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

14.     Because of the Individual Defendants' positions with the Company, they had access to the adverse undisclosed information about the Company's business, operations, operational trends, financial statements, markets and present and future business prospects via access to internal corporate documents (including the Company's operating plans, budgets and forecasts and reports of actual operations compared thereto), conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith.

15.     It is appropriate to treat the Individual Defendants as a group for pleading purposes and to presume that the false, misleading and incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are the collective actions of the narrowly defined group of defendants identified above. Each of the above officers of EPIX, by virtue of their high-level positions with the Company, directly participated in the management of the Company, was directly involved in the day-to-day operations of the Company at the highest levels and was privy to confidential proprietary information concerning the Company and its business, operations, growth, financial statements, and financial condition, as alleged herein. Said defendants were involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein, were aware, or recklessly disregarded, that the false and misleading statements were being issued regarding the Company, and approved or ratified these statements, in violation of the federal securities laws.

4

16.     As officers and controlling persons of a publicly-held company whose securities were, and are, registered with the SEC pursuant to the Exchange Act, and was traded on the NASDAQ and governed by the provisions of the federal securities laws, the Individual Defendants each had a duty to disseminate promptly, accurate and truthful information with respect to the Company's financial condition and performance, growth, operations, financial statements, business, markets, management, earnings and present and future business prospects, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of the Company's publicly-traded securities would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

17.     The Individual Defendants participated in the drafting, preparation, and/or approval of the various public and shareholder and investor reports and other communications complained of herein and were aware of, or recklessly disregarded, the misstatements contained therein and omissions therefrom, and were aware of their materially false and misleading nature. Because of their Board membership and/or executive and managerial positions with EPIX, each of the Individual Defendants had access to the adverse undisclosed information about EPIX financial condition and performance as particularized herein and knew (or recklessly disregarded) that these adverse facts rendered the positive representations made by or about EPIX and its business issued or adopted by the Company materially false and misleading.

18.     The Individual Defendants, because of their positions of control and authority as officers and/or directors of the Company, were able to and did control the content of the various SEC filings, press releases and other public statements pertaining to the Company during the Class Period.

5

Each Individual Defendant was provided with copies of the documents alleged herein to be misleading prior to or shortly after their issuance and/or had the ability and/or opportunity to prevent their issuance or cause them to be corrected. Accordingly, each of the Individual Defendants is responsible for the accuracy of the public reports and releases detailed herein and is therefore primarily liable for the representations contained therein.

19.     Each of the defendants is liable as a participant in a fraudulent scheme and course of business that operated as a fraud or deceit on purchasers of EPIX securities by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme: (1) deceived the investing public regarding EPIX business, operations, management and the intrinsic value of EPIX securities; and (ii) caused Plaintiffs and other members of the Class to purchase EPIX securities at artificially inflated prices.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

20.     Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of EPIX between July 10, 2003 and January 14, 2005, inclusive (the "Class Period") and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

21.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, EPIX's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time, and can only be

6

ascertained through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by EPIX or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

22.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

23.     Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation.

24.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by defendants' acts as alleged herein;

(b)     whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of EPIX; and

(©)     to what extent the members of the Class have sustained damages and the proper measure of damages.

25.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of

7

individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

### Background

26.     EPIX is a developer of targeted contrast agents that are designed to improve the diagnostic quality of images produced by magnetic resonance imaging ("MRI"). MRI is an imaging technology for range of applications, including the identification and diagnosis of a variety of medical disorders.

27.     The Company is developing two products, MS-325 and EP-2104R, for use in MRI to improve the diagnosis of multiple cardiovascular diseases affecting the body's arteries and veins (the vascular system). In December 2003, it submitted a New Drug Application, for MS-325, the principal product the Company is developing, to the United States Food and Drug Administration. MS-325 is designed to provide visual imaging of the vascular system through a type of MRI known as magnetic resonance angiography. EP-2104R is designed to illuminate and identify blood clots using MRI.

### Materially False And Misleading
### Statements Issued During The Class Period

28.     The Class Period commences on July 10, 2003. At that time, EPIX issued a press release concerning the results of the final phase III trials of MS-325 for MR Angiography. Therein, EPIX stated the following:

> Results from EPIX Medical Inc.'s (Nasdaq: EPIX) final two Phase III MS-325 clinical trials in patients with suspected vascular disease in the renal and pedal arteries (kidneys and feet) were announced today concurrent with the Eleventh Annual Scientific Meeting of the

8

International Society of Magnetic Resonance in Medicine (ISMRM) in Toronto. Each trial met its primary clinical endpoint, demonstrating statistically significant improvement in accuracy for detecting renal and pedal vascular disease with MS-325-enhanced magnetic resonance angiography (MRA) compared to non-contrast MRA. These final two Phase III studies further support results from previous Phase III studies and will form the basis for the NDA submission planned for later in the year, requesting a broad MRA indication. The company expects MS-325 to be the first contrast agent submitted to the FDA for an MRA indication.

"We believe that these latest study results, as part of the complete MS-325 Phase III database, will provide a very strong package to support the broad use of MS-325 in MRA, which we see as the next generation of MR contrast," said EPIX CEO Michael D. Webb. "Our NDA submission will include the results from all four Phase III MS-325 clinical trials in patients with suspected vascular disease in the aortoiliac, pedal and renal arteries. After recent consultation with the FDA, we continue to believe that our MRA studies in these widely varying vascular areas will support a broad indication for MRA using MS-325."

"Previous studies with MS-325 support the safety and efficacy of this novel imaging agent in the aortoiliac region, where blood flow can be turbulent. The results of these final two studies confirm the wide range of vascular beds that can be examined using MS-325 MRA," said Gregory Sorensen, M.D., Associate Professor of Radiology at Harvard Medical School and Medical Director for EPIX. Dr. Sorensen further commented, "These Phase III studies show that MS-325 aids the imaging of blood flow to organs such as the kidneys, and areas of slow blood flow such as the feet. The consistency of the results shown in all four Phase III studies has demonstrated that MS-325 should enable physicians to make important decisions about the care of their patients with greater confidence and accuracy."

29.    On December 17, 2003, EPIX filed a current report with the SEC on Form 8-K. Therein, the Company stated that "[o]n December, 16, 2003, Epix Medical, Inc. issued a press release announcing that it ha[d] submitted a New Drug Application (NDA) to the Food and Drug Administration (FDA) for MS-325, a contrast agent designed specifically for vascular imaging with

magnetic resonance angiography (MRA)." The December 16, 2003, press release was attached as an exhibit to the Company's Form 8-K. In the Company's December 16, 2003, press release, EPIX stated the following:

> EPIX Medical, Inc. (NASDAQ: EPIX), a developer of specialty pharmaceuticals for magnetic resonance imaging (MRI), today announced that it has submitted a New Drug Application (NDA) to the Food and Drug Administration (FDA) for MS-325, a contrast agent designed specifically for vascular imaging with magnetic resonance angiography (MRA). MS-325 is being co-developed by EPIX and Schering AG, Germany (NYSE:SHR, FSE:SCH). EPIX is the first company to seek marketing approval in any country for an MR blood pool agent, a new class of imaging agents expected to expand the clinical use of MRI by providing patients and physicians an innovative means for diagnosing vascular abnormalities. The MS-325 NDA is the culmination of an eight-year MRA development program that was discussed with the FDA as the trials progressed. It includes the results of 18 clinical trials, involving 1,438 subjects who received MS-325. The MS-325 NDA is the first application for marketing approval for an MR contrast agent to be submitted to the FDA for the primary indication of MRA.

> "After extensive scientific and clinical development, we are extremely pleased to announce the submission of the MS-325 NDA to the FDA for a broad vascular imaging indication outside the heart," commented Michael D. Webb, President and CEO of EPIX. "Currently, the standard diagnostic exam for vascular disease is invasive, catheter-based X-ray angiography. We believe MS-325-enhanced-MRA will provide a valuable alternative to X-ray angiography. In addition, there are a significant number of people with vascular disease who, for medical or other reasons, are unlikely to undergo an X-ray angiogram, and who might benefit from a minimally-invasive MRA exam using MS-325."

> "An estimated 62 million people in the United States have some form of cardiovascular disease, which can result in atherosclerotic plaque build-up that causes stroke, heart attack, or limb loss," continued Webb. "In 2002, there were 4.8 million diagnostic angiograms performed in arterial beds outside the heart, and an additional 2.7 million diagnostic angiograms of the coronary arteries. As our

10

population ages, cardiovascular disease is putting an increasing burden on our health care system. We believe that MS-325 will address a large and growing medical need, and that both patients and physicians will rapidly adopt this new, less costly procedure."

30.    On February 17, 2004, EPIX filed a current report with the SEC on Form 8-K.

Therein, the Company stated the following:

On February 17, 2004, Epix Medical, Inc. issued a press release announcing that the U.S. Food and Drug Administration (FDA) has determined that the New Drug Application (NDA) submitted for MS-325 (gadofosveset) has been accepted for filing by the Agency and has been designated for a standard review cycle. Acceptance for filing indicates that the FDA considers the NDA to be complete and ready for review. The target date for first FDA action in the standard review cycle is ten months from the December, 2003 date of submission. MS-325, a contrast agent designed specifically for vascular imaging with magnetic resonance angiography (MRA), is being co-developed by EPIX Medical, Inc. (Nasdaq:EPIX) and Schering AG, Germany (NYSE: SHR; FSE:  SCH). A copy of the press release is attached to this Current Report on Form 8-K as Exhibit 99.1.

"The NDA submission for MS-325 was based on the results of a large Phase III clinical trial program that included four separate studies. We have been working actively with the FDA, and are pleased to move to the next stage of the review process," said Michael D. Webb, President and CEO of EPIX. "We believe that, if approved, MS-325-enhanced MRA will provide a safer way to perform diagnostic angiography. Given the risks that are associated with catheter X-ray angiography, many patients are contraindicated for either the X-ray contrast agent, or the procedure itself. MS-325 has the potential to help address this important medical need."

31.    On November 3, 2004, EPIX filed another current report on Form 8-K with the SEC.

Therein, the Company stated:

On November 3, 2004, EPIX Pharmaceuticals, Inc. issued a press release that announced that the Securities and Exchange Commission has declared effective its Registration Statement on Form S-3 relating

> to the resale of $100 million aggregate principal amount of its 3.00%
> convertible senior notes due 2024 (the "Notes") and the shares of its
> common stock issuable upon conversion of the Notes.

32.     The statements contained in paragraphs 26-29 were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that non-contrast MRA comparator scans used in the Phase III trials varied significantly which caused the efficacy of MS 325 to be compromised; (2) that the Company's Phase III trials generated a large number of uninterpretable images, which also caused the efficacy of MS-325 to be compromised; (3) that problems described above resulted in varying and questionable statical treatments of the images seen during the Phase III trial; and (5) that as result of the above, the likelihood of MS-325's NDA being approved was highly unlikely.

### The Truth Begins to Emerge

33.     On January 14, 2005, defendants issued a press release entitled "EPIX Pharmaceuticals Announces Receipt of Approvable Letter from FDA for MS-325; Agency Requests Additional Clinical Studies." Therein, the Company stated the following:

> EPIX Pharmaceuticals, Inc., announced today that the U.S. Food and
> Drug Administration (FDA) has completed its review of the new drug
> application for MS-325 (gadofosveset trisodium), and found it to be
> approvable. In the approvable letter, the FDA requested additional
> clinical studies to demonstrate efficacy prior to approval. MS-325 is
> the first in a new class of MRI blood pool  contrast agents, and is
> specifically designed for magnetic resonance angiography (MRA).
>
> The FDA indicated that its principal questions continue to relate to
> the non-contrast MRA comparator scans used in the Phase III trials
> and to the statistical treatment of uninterpretable images. The letter
> identified no safety or manufacturing deficiencies.
>
> EPIX is continuing its active dialogue with the FDA in order to

determine the next steps the Company will need to take to secure the approval of this first-of-its kind contrast imaging agent. EPIX remains committed to developing MRI cardiovascular imaging pharmaceuticals that enable clinicians to obtain and view clearer scans.

34.    During defendants' conference call of January 14, 2005, defendants were pressed to

discuss "the timeline of their requirements going forward." Responding to this and similar questions,

defendant Webb stated:

> I think our history in the four Phase III trials is probably what I'd want to comment on which is that we did conduct the four Phase III trials. They were relatively large. We do have a highly experienced machine here in terms of generating the patient enrollment. It takes several months to get a protocol written and submitted and approved through IRBs at various sites.

> The Phase III trials we conducted over the last few years, actual patient enrollment time was 9 to 12 months per trial from first injection to final injection.

> And then of course the blinded read (ph) and the sufficient and rollup of all the data takes many months on the back of that.

35.    News of this shocked the market. Shares of EPIX fell $3.98 per share or 27.17

percent, to close at $10.67 per share, on unusually high trading volume.

## UNDISCLOSED ADVERSE FACTS

36.    The market for EPIX's securities was open, well-developed and efficient at all

relevant times.  As a result of these materially false and misleading statements and failures to

disclose, EPIX's securities traded at artificially inflated prices during the Class Period. Plaintiffs and

other members of the Class purchased or otherwise acquired EPIX securities relying upon the

integrity of the market price of EPIX's securities and market information relating to EPIX, and have

13

been damaged thereby.

37.     During the Class Period, defendants materially misled the investing public, thereby inflating the price of EPIX's securities, by publicly issuing false and misleading statements and omitting to disclose material facts necessary to make defendants' statements, as set forth herein, not false and misleading. Said statements and omissions were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company, its business and operations, as alleged herein.

38.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by plaintiffs and other members of the Class. As described herein, during the Class Period, defendants made or caused to be made a series of materially false or misleading statements about EPDC's business, prospects and operations. These material misstatements and omissions had the cause and effect of creating in the market an unrealistically positive assessment of EPIX and its business, prospects and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and misleading statements disseminated during the Class Period resulted in plaintiffs and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## ADDITIONAL SCIENTER ALLEGATIONS

39.     As alleged herein, defendants acted with scienter in that defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or

14

disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, defendants, by virtue of their receipt of information reflecting the true facts regarding EPIX, their control over, and/or receipt and/or modification of EPIX allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning EPIX, participated in the fraudulent scheme alleged herein.

40.     Defendants knew and/or recklessly disregarded the falsity and misleading nature of the information which they caused to be disseminated to the investing public. The ongoing fraudulent scheme described in this complaint could not have been perpetrated over a substantial period of time, as has occurred, without the knowledge and complicity of the personnel at the highest level of the Company, including the Individual Defendants.

41.     During the Class Period, defendant Webb sold a total of 66,254 shares of EPIX stock, for net proceeds of $1.2 million. Also during the Class Period, defendant Marshall sold a total of 21,500 shares of EPIX stock for net proceeds of $372,017.

42.     Additionally, during the Class Period, defendants, on June 3, 2004, were able to complete the sale of $100 million (including the over-allotment) in 3.00% convertible senior notes (the "Notes"), resulting in proceeds of approximately $96 million to the Company.

## Applicability Of Presumption Of Reliance:
## Fraud-On-The-Market Doctrine

43.     At all relevant times, the market for EPIX securities was an efficient market for the following reasons, among others:

15

(a)      EPIX stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)      As a regulated issuer, EPIX filed periodic public reports with the SEC and the NASDAQ;

(c)      EPIX regularly communicated with public investors *via* established market communication mechanisms, including through regular disseminations of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and

(d)      EPIX was followed by several securities analysts employed by major brokerage firms who wrote reports which were distributed to the sales force and certain customers of their respective brokerage firms. Each of these reports was publicly available and entered the public marketplace.

44.      As a result of the foregoing, the market for EPIX securities promptly digested current information regarding EPIX from all publicly-available sources and reflected such information in EPIX stock price. Under these circumstances, all purchasers of EPIX securities during the Class Period suffered similar injury through their purchase of EPIX securities at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

45.      The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this complaint. Many of the specific statements pleaded herein were not identified as "forward-looking statements" when made. To the extent there were any forward-looking statements, there were no meaningful

16

cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the particular speaker knew that the particular forward looking statement was false, and/or the forward-looking statement was authorized and/or approved by an executive officer of EPIX who knew that those statements were false when made.

## FIRST CLAIM
### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

46.    Plaintiffs repeats and reallege each and every allegation contained above as if fully set forth herein.

47.    During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; and (ii) cause Plaintiffs and other members of the Class to purchase EPIX securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

48.    Defendants: (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high

17

market prices for EPIX securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

49. Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of EPIX as specified herein.

50. These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of EPIX value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about EPIX and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of EPIX securities during the Class Period.

51. Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii)

18

each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

52.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing EPIX operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

53.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of EPIX securities was artificially inflated during the Class Period. In ignorance of the fact that market prices of EPIX publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trades, and/or on the absence of material adverse information that was known to or recklessly

disregarded by defendants but not disclosed in public statements by defendants during the Class

Period, Plaintiffs and the other members of the Class acquired EPIX securities during the Class

Period at artificially high prices and were damaged thereby.

54.    At the time of said misrepresentations and omissions, Plaintiffs and other members

of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiffs and the other

members of the Class and the marketplace known the truth regarding the problems that EPIX was

experiencing, which were not disclosed by defendants, Plaintiffs and other members of the Class

would not have purchased or otherwise acquired their EPIX securities or, if they had acquired such

securities during the Class Period, they would not have done so at the artificially inflated prices

which they paid.

55.    By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange

Act, and Rule 10b-5 promulgated thereunder.

56.    As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and the

other members of the Class suffered damages in connection with their respective purchases and

sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation Of Section 20(a) Of**
**The Exchange Act Against the Individual Defendants**

57.    Plaintiffs repeats and reallege each and every allegation contained above as if fully

set forth herein.

58.    The Individual Defendants acted as controlling persons of EPIX within the meaning

of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions, and

their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge, of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiffs contend are false and misleading. The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiffs to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59.    In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

60.    As set forth above, EPIX and the Individual Defendants each violated Section 10(b) and Rule10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' wrongful conduct, Plaintiffs and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**WHEREFORE**, Plaintiff pray for relief and judgment, as follows:

(a)    Determining that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and certifying Plaintiffs as class representatives under Rule 23 of the Federal Rules

21

of Civil Procedure and Plaintiffs' counsel as Lead Counsel;

      (b)    Awarding compensatory damages in favor of Plaintiffs and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

      (c)    Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

      (d)    Such other and further relief" as the Court may deem just and proper.

22

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: February 10, 2005

Thomas M. Sobol
HAGENS BERMAN LLP
One Main Street, 4th Floor
Cambridge, MA 02142
Tel. 617.482.3700
Fax. 617.482.3003

SPECTOR, ROSEMAN & KODROFF, P.C.
Robert M. Roseman
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Tel. 212.496.0300
Fax. 212.496.6611

**Attorneys for Plaintiffs**

23

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, John C. Johnson, Jr., trustee of John C. Johnson Defined Benefit Pension Plan ("Defined Benefit Plan"), ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1. I am the plaintiff in the Complaint, and authorized make this certification pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995, and as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934 on behalf of Defined Benefit Plan.

2. I have reviewed the foregoing complaint filed on my behalf and on behalf of all others similarly situated, and I authorized its filing.

3. I did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action arising under Title I of the Securities Exchange Act of 1934.

4. I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5. The following are all my transactions in EPIX Pharmaceuticals, Inc. common stock that are the subject of this action during the Class Period specified in the Complaint:

| No. Of Sh. Purchased | Price Per Share | Date | No. Of Sh. Sold ⟨0⟩ | Price Per Share | Date |
|---|---|---|---|---|---|
| 1000 | 14.76 | 7-3-03 | | | |
| 500 | 22.12 | 9-8-04 | | | |

Total number of shares held at the start of the Class Period: 6,000

SPECTOR, ROSEMAN & KODROFF, P.C.

6.    As of the date of this Certification, I have sought to serve as a representative party on behalf of a class under Title I of the Securities Exchange Act of 1934 for the following:

(Please indicate any other class action cases in which you are or have been involved in during the prior three years.)

7.    I agree not to accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    I make this Certification without waiver of any applicable privileges and without waiver of any right to challenge the necessity for, or the constitutionality of, this Certification, or to object to the filing of this Certification on any ground whatsoever.

I declare under penalty of perjury that the matters stated in this Certification are true to the best of my knowledge, information and belief.

Executed this $\underline{8^{TH}}$ day of the month of February, 2005.

John C. Johnson, Jr., Trustee
Defined Benefit Pension Plan

SPECTOR, ROSEMAN & KODROFF, P.C.

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

We, Jeffrey S. Johnson and John C. Johnson, Jr., joint tenants, ("Plaintiffs") declare, as to the claims asserted under the federal securities laws, that:

1.    We are the plaintiffs in the Complaint, and authorized make this certification pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995, and as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934 on behalf of Defined Benefit Plan.

2.    We have reviewed the foregoing complaint filed on our behalf and on behalf of all others similarly situated, and I authorized its filing.

3.    We did not purchase the security that is the subject of this action at the direction of Plaintiffs' counsel or in order to participate in this private action arising under Title I of the Securities Exchange Act of 1934.

4.    We are willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5.    The following are all our transactions in EPIX Pharmaceuticals, Inc. common stock that are the subject of this action during the Class Period specified in the Complaint:

| No. Of Sh. Purchased | Price Per Share | Date | No. Of Sh. Sold | Price Per Share | Date |
|---|---|---|---|---|---|
| 100 | $17.476 | 8-19-04 | | | |
| 100 | $16.189 | 10-21-04 | | | |
| 100 | $17.649 | 12-28-04 | | | |

Total number of shares held at the start of the Class Period: _____ ALREADY OWNED 1200 SHARES ACQUIRED PRIOR TO THE CLASS PERIOD

SPECTOR, ROSEMAN & KODROFF, P.C.

6.    As of the date of this Certification, we have sought to serve as a representative party on behalf of a class under Title I of the Securities Exchange Act of 1934 for the following:

(Please indicate any other class action cases in which you are or have been involved in during the prior three years.)

7.    We agree not to accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.    We make this Certification without waiver of any applicable privileges and without waiver of any right to challenge the necessity for, or the constitutionality of, this Certification, or to object to the filing of this Certification on any ground whatsoever.

We declare under penalty of perjury that the matters stated in this Certification are true to the best of my knowledge, information and belief.

Executed this _____ day of the month of February, 2005.


_____
Jeffrey S. Johnson


_____
John C. Johnson, Jr.


SPECTOR, ROSEMAN & KODROFF, P.C.

CERTIFICATION OF NAMED PLAINTIFF
PURSUANT TO FEDERAL SECURITIES LAWS

I, John C. Johnson, Jr., trustee of John C. Johnson, Jr. Target Benefit Pension ("Target Benefit Pension"), ("Plaintiff") declare, as to the claims asserted under the federal securities laws, that:

1.    I am the plaintiff in the Complaint, and authorize to make this certification pursuant to Section 101 of the Private Securities Litigation Reform Act of 1995, and as required by Section 21D(a)(2) of Title I of the Securities Exchange Act of 1934.

2.    I have reviewed the foregoing complaint filed on my behalf and on behalf of all others similarly situated, and I authorized its filing.

3.    I did not purchase the security that is the subject of this action at the direction of Plaintiff's counsel or in order to participate in this private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

5.    The following are all my transactions in EPIX Pharmaceuticals, Inc. common stock that are the subject of this action during the Class Period specified in the Complaint:

| No. Of Sh. Purchased | Price Per Share | Date | No. Of Sh. Sold  O | Price Per Share | Date |
|---|---|---|---|---|---|
| 900 | 14.74 | 7-3-03 | | | |
| 100 | 14.75 | 7-3-03 | | | |
| 500 | 22.12 | 9-8-04 | | | |

TOTAL # OF SHARES OWNED AT START OF CLASS PERIOD WAS 7,500.

SPECTOR, ROSEMAN & KODROFF, P.C.

Total number of shares held at the start of the Class Period: _____

6.     As of the date of this Certification, I have sought to serve as a representative party on behalf of a class under Title I of the Securities Exchange Act of 1934 for the following:

(Please indicate any other class action cases in which you are or have been involved in during the prior three years)

7.     I agree not to accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

8.     I make this Certification without waiver of any applicable privileges and without waiver of any right to challenge the necessity for, or the constitutionality of, this Certification, or to object to the filing of this Certification on any ground whatsoever.

I declare under penalty of perjury that the matters stated in this Certification are true to the best of my knowledge, information and belief.

Executed this 8th day of the month of FEBRUARY, 2005.

John C. Johnson, Jr., Trustee
Target Benefit Pension

SPECTOR, ROSEMAN & KODROFF, P.C.

℀JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS

John C. Johnson Jr. Defined Benefit Pension Plan et al., Individually and On Behalf of All Others Similarly Situated

**DEFENDANTS**

EPIX Pharmaceuticals, Inc. (f/k/a EPIX Medical Inc.), Michael Webb, Peyton Marshall and Andrew Uprichard

**(b)** County of Residence of First Listed Plaintiff    Montgomery
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE

**05 CV 10272 GAO**

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Hagens Berman LLP
One Main Street, 4th Floor, Cambridge, MA 02124    Ph.(617)-482-3700

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☒ 3  Federal Question (U.S. Government Not a Party) |
| ☐ 2  U.S. Government Defendant | ☐ 4  Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☒ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor-Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor-Mgmt. Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from another district (specify)    ☐ 6 Multidistrict Litigation    ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. 78

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):    JUDGE    DOCKET NUMBER

DATE    02/10/2005    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #    AMOUNT    APPLYING IFP    JUDGE    MAG. JUDGE

JS 44 Reverse (Rev. 11/04)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.    (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.    Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.    Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.    Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.    Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.    Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**    Example:    U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.    Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.    Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

1.  Title of case (name of first party on each side only) _John C. Johnson Jr. et al. v. EPIX Pharmaceuticals, Inc., et al._

2005 FEB 10  P 1: 23

2.  Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See
local rule 40.1(a)(1)).

U.S. DISTRICT COURT
DISTRICT OF MASS.

- [ ]   I.   160, 410, 470, R.23, REGARDLESS OF NATURE OF SUIT.

- [x]   II.  195, 368, 400, 440, 441-444, 540, 550, 555, 625, 710, 720, 730,     *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.          for patent, trademark or copyright cases

- [ ]   III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
             315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
             380, 385, 450, 891.

05 CV 10272 GAO

- [ ]   IV.  220, 422, 423, 430, 460, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

- [ ]   V.   150, 152, 153.

3.  Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in
this district please indicate the title and number of the first filed case in this court.

_____

4.  Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES [ ]     NO [x]

5.  Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See
28 USC §2403)

YES [ ]     NO [x]

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES [ ]     NO [ ]

6.  Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES [ ]     NO [x]

7.  Do **all** of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of
Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule
40.1(d)).

YES [ ]     NO [ ]

A.  If yes, in which division do **all** of the non-governmental parties reside?

Eastern Division [ ]     Central Division [ ]     Western Division [ ]

B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental
agencies, residing in Massachusetts reside?

Eastern Division [ ]     Central Division [ ]     Western Division [ ]

8.  If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If
yes, submit a separate sheet identifying the motions)

YES [ ]     NO [ ]

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME _Thomas M. Sobol_

ADDRESS _One Main Street, 4th Floor, Cambridge, MA 02142_

TELEPHONE NO. _617-482-3700_

(Coversheetlocal.wpd - 10/17/02)